UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY JOHNSON,

       Plaintiff,                                   Hon. Sally J. Berens

v.                                                    Case No. 1:19-cv-834

CITY OF KENTWOOD, et al.,

       Defendants.
_____/

## **OPINION**

The Court has before it the City Defendants' motion for reconsideration (ECF No. 39) of the Court's May 4, 2020 Opinion and Order granting in part and denying in part the City Defendants' motion for judgment on the pleadings (ECF No. 36). For the following reasons, and pursuant to 28 U.S.C. § 1915(e)(2)(B), which authorizes a district court to screen *in forma pauperis* complaints and "dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief," the Court will dismiss Plaintiff's remaining claims for failure to state a claim and because Defendants are entitled to qualified immunity.[1] The Court will deny Defendants' motion for reconsideration as moot.

---

[1] "While qualified immunity is an affirmative defense generally used to protect government officials from liability for civil damages, a court is not deprived from considering the defense while screening a *pro se* complaint." *Matthews v. City of Collierville*, No. 13-2703, 2014 WL 69127, at *7 (W.D. Tenn. Jan. 8, 2014) (collecting cases); *see also Begola v. Brown*, No. 97-2194, 1998 WL 894722, at *2 (6th Cir. Dec. 14, 1998) (affirming dismissal pursuant to 28 U.S.C. § 1915(e)(2), based in part, on qualified immunity.

**Background**

The Court set forth the following facts of this case, as taken from Plaintiff Larry Johnson's complaint and the exhibits attached to the City Defendants' Rule 12(c) motion, in its May 4, 2020 Opinion and Order:

> On March 2, 2017, Johnson, who was previously convicted of Criminal Sexual Conduct, Second Degree, M.C.L. § 750.520c(1)(a), entered the Kentwood Police Department lobby to register as a sex offender, as required by SORA. (ECF No. 1 at PageID.4; ECF No. 14-1.) Johnson stepped to the window separating KPD employees from the public, provided his driver's license and proof of indigence to Defendant Kasunic, and moved to the waiting area of the lobby. (ECF No. 1 at PageID.4–5.) Several minutes later, Defendant Fries called Johnson to the window to review the processed form for mistakes or inaccuracies. Johnson noticed inaccuracies in two sections and so informed Fries, but Fries refused to correct them. (*Id.* at PageID.5.) Fries told Johnson that someone would come out to talk with him. (*Id.* at PageID.6.)
>
> A short time later, Sgt. Connell entered the lobby and asked Johnson if there was a problem. Referring to Fries, Johnson responded, "this fucker wont [sic] do his job." Sgt. Connell then told Johnson, "I'm not going to let you talk to my employees that way." Johnson told Sgt. Connell, "Fuck you motherfucker," and Sgt. Connell then advised Johnson that he could arrest Johnson for disorderly conduct. Johnson responded, "Fuck you, no you cant [sic]. It's constitutionally protected speech." (*Id.* at PageID.6–7.) At that point, Fries handed the registration form to Johnson and Johnson signed it. Fries then made a copy and gave it to Johnson, and Sgt. Connell told Johnson that he was free to go. Johnson responded that if he was free to go, he was also free to stay. Sgt. Connell repeated that Johnson was free to go, and Johnson responded that he was in the lobby of a public building that was open to the public during normal business hours. Sgt. Connell again told Johnson that he was free to go and walked away. Johnson then left the building. (*Id.* at PageID.7.)
>
> Johnson alleges that Sgt. Connell filed a criminal complaint against him with City prosecutors on March 2, 2017, for disorderly conduct, in violation of City Ordinance 38-231, and trespass, in violation of City Ordinance 38-81, although it appears that Sgt. Connell actually executed the criminal complaint on March 20, 2017. (*Id.* at PageID.9; ECF No. 14-2.) The criminal complaint alleged as follows:
>
> COUNT 1
>
> Defendant LARRY DEE JOHNSON did unlawfully engage in a disturbance in a public place to wit: LARRY DEE JOHNSON did create a disturbance within the Police Department – District Court Complex located in the City of Kentwood by

>    yelling, using vulgar language in a loud manner and disrupting the ongoing business of the Police Department contrary to the City of Kentwood Ordinance 38-231
>
>    COUNT 2
>
>    Defendant LARRY DEE JOHNSON did unlawfully remain on the premises of another to wit:   The City of Kentwood Police Department/District Court Complex after having forbidden to do so by officials of the Kentwood Police Department to wit:   SGT James Connell contrary to the City of Kentwood Ordinance 38-81
>
>    (*Id.*)   The same day, District Judge William Kelley of the 62B District Court issued a misdemeanor arrest warrant based on the criminal complaint.   (ECF No. 14-3.)   Johnson received the warrant in the mail on March 24, 2017 and turned himself in to the Kentwood Police Department on March 27, 2017.   (ECF No. 1 at PageID.9–10.)   Johnson was arraigned on the charges by Judge Kelly and released the same day.   (*Id.* at PageID.10.)
>
>    Johnson appeared before Judge Kelly again on May 10, 2017, represented by attorney Jolene Weiner-Vatter.   (*Id.*; ECF No. 14-4.)   Johnson alleges that both of the original charges were dismissed and that he was charged with trespass in violation of City Ordinance 38-82, prohibiting unauthorized presence in City buildings.   (ECF No. 1 at PageID.10.)   Johnson alleges that he pled no contest to the charge, although the Judgment of Sentence indicates that Johnson pled guilty. (*Id.* at PageID.11; ECF No. 14-4.)   The court accepted the plea and fined Johnson $425.00.   (*Id.*)

(ECF No. 36 at PageID.190–92.)

## Discussion

In its May 4, 2020 Opinion and Order, the Court dismissed all of Johnson's claims except his First Amendment retaliatory-arrest claim and his Fourth Amendment lack-of-probable-cause claim. As indicated in that ruling, both of Johnson's remaining claims hinge on the absence of probable cause. Therefore, the Court examines whether Johnson's allegations establish a lack of probable cause.

"'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'"   *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)).   This standard is satisfied by a showing of a "probability of criminal activity."   *Criss v. City of Kent*,

3

867 F.2d 259, 262 (6th Cir. 1988) (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). An officer can lawfully arrest a suspect so long as there is probable cause to arrest for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). So long as probable cause exists, an arrest will be deemed valid "even if the arrest warrant is invalid." *United States v. Fachini*, 466 F.2d 53, 57 (6th Cir. 1972).

Johnson alleges that the arrest warrant and criminal complaint for violations of City of Kentwood Ordinance 38-231, for disturbing the peace, and City of Kentwood Ordinance 38-81, for trespassing, were not supported by probable cause because Defendants' statements on which they were issued were false. (ECF No. 1 at PageID.9.) Both of those charges were dismissed, but Plaintiff was convicted of unauthorized presence in city buildings in violation of City of Kentwood Ordinance 38-82. Section 38-82 (2004) provides:

> (a) In this section, the term "city building" means any building, or portion thereof, owned, leased or used by the city for the exclusive purpose of conducting its business.
>
> (b) No person shall remain on the premises of any city building unless such person is present for the purpose of conducting business with city officials or attending, participating in or observing any hearing or meeting held in such city building.

*See* https://library.municode.com/mi/kentwood/codes/code_of_ordinances?nodeId=PT2COOR_CH38OFMIPR_ART3OFAGPRRI_DIV1GE_S38-82UNPRBU (last visited May 20, 2020). According to Johnson, once Fries handed him a copy of the SORA registration form and he had concluded his business, he did not depart the police department lobby, but insisted on remaining, even though Sgt. Connell told him several times that he was free to go.[2] (ECF No. 1 at PageID.7.)

---

[2] Defendants argue in their motion for reconsideration that the Court was bound to give effect to the Judgment showing that Johnson pled guilty and disregard his allegation that he pled no

4

By Johnson's own admission, probable cause existed to conclude that he violated Ordinance 38-82 by remaining in the police station lobby without a permissible reason to do so. Thus, probable cause existed to arrest and charge Johnson.

The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability

---

contest. (ECF No. 40 at PageID.217–18.) But the Sixth Circuit has made clear that even if a document is the type of public record that a court may judicially notice, there are limits to what may be noticed. Most importantly, judicially-noticed facts must be reasonably accurate and not open to dispute. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). This is in line with Federal Rule of Evidence 201(b)(2), which allows a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, even when judicial notice is appropriate, a document may be noticed "only for the fact of [its] existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697; *see also Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (holding that the district court did not err in taking judicial notice of bankruptcy documents because it "did so not in a way that took judicial notice of the facts in the paragraph [of the plaintiff's objection], but rather in a way that took notice that [the plaintiff] made an objection to the Sale Order based largely on the same claims in the Complaint, and then later withdrew that objection"); *Bachi-Reffitt v. Reffitt*, No. 1:17-CV-263, 2017 WL 5998112, at *5 (W.D. Mich. Dec. 4, 2017) (considering court filings and transcripts not for "the truth of the matters asserted therein . . . [but] for the fact that certain things were said, argued, and decided in those courts") (internal quotation marks and brackets omitted). Moreover, given the record in this case, there is no room for argument that the guilty plea notation in the Judgment is not reasonably in dispute. Plaintiff attached to his response to Defendants' motion a Case History Print from the 62 B District Court showing the details of his case. The summary of the Unauthorized Presence in City Building charge on the first page contains the following notation: "Judgment Method: NC Judgment Code: G". (ECF No. 32-2 at PageID.171.) The second page contains a chronology of events in the case, including an entry for the date of Plaintiff's plea, May 10, 2017: "Plead no contest to trespassing in public building." (*Id.* at PageID.172.)

when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This "insulation from federal civil rights litigation bestowed upon state governmental personnel by qualified immunity sweeps broadly, affording them 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.9 (6th Cir. 200) (citations omitted).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

As already discussed above, Plaintiff's allegations affirmatively show that probable cause existed to believe that Plaintiff violated Ordinance 38-82. Thus, no constitutional violation occurred. Under the "clearly established" inquiry, the question is whether the right was so clearly established that a reasonable official would understand that what he or she is doing violates the law. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009). "The essential inquiry is whether the defendant had fair warning that his actions were unconstitutional." *Hensley v. Gassman*, 693 F.3d 681, 694 (6th Cir. 2012) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Here, the Court has no basis to conclude that Defendants were on notice that they were violating Johnson's clearly established rights. In fact, the Sixth Circuit has held that "[a]n officer is entitled to qualified immunity when probable cause supports the suspect's arrest on some offense, even if it is not the

6

offense of arrest." *Burden v. Paul*, 493 F. App'x 660, 663 (6th Cir. 2012) (citing *Avery v. King*, 110 F.3d 12, 15 (6th Cir. 1997)).  Thus, even taking as true Johnson's allegation that his arrest and prosecution for disorderly conduct and trespassing were not supported by probable cause, the arrest and prosecution did not violate Johnson's clearly established rights.

## Conclusion

For the foregoing reasons, the Court concludes that Johnson's remaining claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) for failure to state a claim upon which relief may be granted and because Defendants are entitled to qualified immunity.

An Order consistent with this Opinion dismissing Johnson's complaint and denying Defendants' motion for reconsideration as moot will enter.


Dated: May 22, 2020                              /s/ Sally J. Berens
                                                 SALLY J. BERENS
                                                 U.S. Magistrate Judge